

United States Courts
Southern District of Texas
FILED

OCT 2 6 2005

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH DEPRISCO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-1859 |
| | § | |
| EL PASO MERCHANT ENERGY- | § | |
| PETROLEUM COMPANY, *et al*, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

I.   INTRODUCTION

Before the Court is a motion for summary judgment of the defendant, El Paso Merchant Energy-Petroleum Company and El Paso Corporation ("El Paso"). The plaintiff, Joe DePrisco ("DePrisco"), has filed a response to the motion for summary judgment and El Paso then filed a reply to the response in support of its motion for summary judgment. After considering the motions, the pleadings, the responses, and the applicable law this Court determines that El Paso's motion for summary judgment should be GRANTED.

II.   **FACTUAL HISTORY**

The plaintiff DePrisco was employed as an expatriate engineer at the Coastal refinery in Aruba. El Paso later purchased the Coastal refinery in March 2001. In April 2001, El Paso

offered DePrisco an employment contract with new terms and conditions.  DePrisco agreed to the terms of the contract but only proposed that his "point of origin" destination be changed.  El Paso accepted this change, and both parties signed the contract in May 2001.

At the commencement of his assignment, DePrisco alleges that he was subjected to an onslaught of problems at the refinery.  DePrisco alleges that he was wrongfully suspended for alleged negligent acts and was later reinstated to a different position without a written job description.  In July 2003, following the deaths of four individuals, DePrisco stated that El Paso wrongfully ordered him to inspect the steel drum where one of the individuals had died. DePrisco believed that this request was outside the scope of his employment and he refused to do the inspection.  DePrisco alleges that after consulting El Paso personnel, he determined that his assignment in Aruba had expired.  Therefore, on August 14, 2003, DePrisco submitted an email to El Paso representatives, expressing his displeasure with the job and ending his assignment in Aruba.  However, he did not end his classification as an El Paso employee and explained that this letter was not to be considered a resignation. In this email, DePrisco refers to a section in the contract that grants him the right as an employee to unilaterally terminate his assignment and be entitled to various benefits.[1]  Specifically, he requested a transfer to another El Paso location in the United States and that all repatriation benefits, which included an incidental expense allowance and temporary living expenses, be paid.  DePrisco contends that the retaliatory

---

[1] There are two different versions of the employment contract.  DePrisco's version has five addenda that appear after the signatures of both parties.  This version was submitted in DePrisco's original petition and his August 2003 email to substantiate his ability to terminate an assignment that he, as an employee, does not agree with.  During deposition, DePrisco admitted that he made various changes to the contract from May 2001 to August 2003 without consulting El Paso. In an attempt to retract his reliance on the purported contract, DePrisco's attorney in a letter states that DePrisco did not rely on the addenda to terminate his assignment. Furthermore, in DePrisco's response to the motion for summary judgment, DePrisco submits the contract that El Paso contends is the true and correct contract. However, it is clear from the record that DePrisco did base his original petition and resignation letter on a fabricated contract that he surreptitiously and continuously amended without El Paso's approval.

practices at the refinery coupled with his safety concerns, prompted him to terminate his assignment in Aruba citing "unanticipated reasons".[2]

On August 19, 2003, El Paso responded to DePrisco's email.  El Paso first requested that DePrisco produce a signed copy of the addendum that he relied on to terminate his assignment. El Paso contends that they did not have a record of the amended sections in their files. At this time El Paso also gave DePrisco a direct order to either report to work or return to work to report and submit a written request for his repatriation benefits. The letter stated that if he did not adhere to either of the requests in the letter, he would be terminated for urgent reasons. Furthermore, El Paso explained in the letter, that DePrisco had refused to complete an inspection that was consistent with his position as an engineer and that El Paso was required to make other arrangements to complete the inspection.  El Paso also responded to DePrisco's transfer request and informed him that it did not have any positions in the United States that would need his skills.  DePrisco refused to adhere to its terms. El Paso terminated DePrisco on August 20, 2003. El Paso also treated DePrisco's email as a voluntary resignation.

On November 12, 2003, DePrisco submitted a written request for severance benefits from the El Paso Severance Plan ("Plan").  DePrisco contends that he is entitled to severance benefits because there were no positions in the United States to which he could be re-assigned. DePrisco's request for severance benefits was denied by the Plan Administrator ("Administrator"). The Administrator stated that after careful review of the administrative record, DePrisco was not entitled to benefits because he was terminated for cause. The

_____

[2]DePrisco cited "unanticipated reasons" so that he may still be eligible for repatriation benefits under the contract. The contract states that if an employee leaves for "unanticipated reasons" they will be eligible for repatriation benefits, which includes transportation, shipment of household goods, storage, incidental expense allowance, temporary living expenses and return to another home country city.  However, if one voluntarily resigns or is terminated for cause, the company reserves the right to modify repatriation benefits, and the incidental expense allowance and temporary living expenses will not be paid.

Administrator also informed DePrisco that he may appeal the denial letter within sixty (60) days. DePrisco never submitted a letter seeking to appeal the denial of severance benefits.  On April 12, 2004, DePrisco filed this suit seeking to recover repatriation costs associated with the employment contract and severance benefits under the Plan.  DePrisco and El Paso filed cross-motions for summary judgment.

## III.    CONTENTION OF THE PARTIES

In its motion, El Paso advances three contentions:  (1) DePrisco was terminated for cause and not entitled to repatriation benefits; (2) DePrisco fails to produce evidence that he was constructively discharged; and (3) El Paso's Severance Plan Administrator did not abuse her discretion when she denied DePrisco severance benefits under the ERISA severance plan. DePrisco responds that El Paso breached the employment contract because he is entitled to the repatriation benefits outlined in the contract.  He also argues that his safety concerns and El Paso's retaliatory tactics prompted him to terminate his assignment.

## IV.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non- moving party must "go beyond the pleadings"

and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.*
at 324.  Throughout the analysis, the "evidence of the non-movant is to be believed, and all
justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242,255 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return
a verdict for the nonmoving party. *See id.* at 247-49.  A failure on the part of the nonmoving
party to offer proof concerning an essential element of its case necessarily renders all other facts
immaterial and mandates a finding that no genuine issue of fact exists. *See Saunders v. Michelin
Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).


**V.      ANALYSIS**

> *Good Cause*

The issue of whether an employer has good cause to discharge an employee is a question
of fact, unless the conduct involved and the effect on the employer's business are clear, in which
case it is a question of law. *Watts v. St. Mary's Hall*, 662 S.W.2d 55,58 (Tex, Civ. App. -- San
Antonio 1983, writ ref'd n.r.e.).  The burden is on the employer to prove the existence of good
cause. *Id.* Terminating an employee for good cause exists when, "[t]he employee [fails] to
perform the duties in the scope of employment that a person of ordinary prudence would have
done under the same or similar circumstances.  An employee's act constitutes good cause for
discharge if it is inconsistent with the continued existence of the employer-employee
relationship." *Lee-Wright Inc. v. Hall*, S.W. 2d 572,580 (Tex, Civ. App. -- Houston [1st Dist.]
1992, no writ]).  Insubordination constitutes good cause for termination.

It is clear from the record that routine inspections are vital to the maintenance of a
refinery.  As part of the plant maintenance, El Paso requested that DePrisco inspect a steel drum

related to the flare system. DePrisco's refusal to comply had a direct effect on El Paso's business activity.  El Paso was required to make alternative arrangements and find another inspector to complete the job.  DePrisco alleges that this requests was not within his scope of employment and constituted a retaliatory tactic aimed at compromising his safety. Both arguments fail.

Pursuant to the contract, El Paso reserved the right to change job duties or titles of employees, as it deems appropriate.  The evidence is overwhelming that, plant maintenance is within DePrisco's scope of employment. Furthermore, El Paso explained to DePrisco on various occasions that monitoring units were only part of his job as a Technical Services Engineer. DePrisco was also required to inspect and monitor unit equipment at the refinery. DePrisco's refusal to follow these instructions was inconsistent with the employer-employee relationship.

Secondly, DePrisco has not proffered any evidence that supports his claims that El Paso acted in a retaliatory manner.  Instead, the evidence supports the contrary.  DePrisco was given the opportunity to return to work even after he submitted his resignation letter. The Court finds that El Paso has made a good-faith effort to provide DePrisco with various options without first terminating him.  Therefore, El Paso's request that DePrisco either return to work or return and complete the requisite papers for repatriation benefits was not retaliatory.  Nor was its decision to terminate DePrisco when he failed to follow instructions.

El Paso has also demonstrated that DePrisco's actions affected the company's business. In DePrisco's termination letter and original petition, he states that he is entitled to repatriation benefits as stated in the addenda in the employment contract.  He specifically refers to an addendum that would grant him the right to his repatriation benefits even after he terminates an assignment that he does not agree with.[3]  Clearly, DePrisco's additional addenda were not part of

_____

[3]In the August 14, 2004 letter DePrisco states that Section I " 'Position and Duties' is amended as follows: Any changes to employee's job title or duties that are not acceptable to employee may cause the employee to end his

the employment contract.  These were self-serving additions to the contract that would benefit DePrisco at the expense of El Paso.   After carefully reviewing the record in this case, the Court determines that there was good cause for El Paso to conclude that DePrisco had voluntarily terminated his employment.

*Constructive Discharge*

In order to prevail in a claim for constructive discharge, " the trier of fact must be satisfied that the working conditions to which the employee was subjected to were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Ugalde v.  W.A. McKenzie Asphalt CO.* 990 F. 2d 239, 243 (5th Cir. 1993) "The burden is on the employee to prove constructive discharge." *Id.* (quoting, *Boze v. Bronstetter*, 92 F. 2d 801, 804-805 (5th Cir. 1990)).

DePrisco alleges that he was the target of various retaliatory acts and that these acts caused him to feel unsafe at El Paso.  He specifically mentions the incident where El Paso instructed him to inspect steel drums where an employee had previously died. DePrisco asserts that this was outside his scope employment and that it was an attempt by El Paso to compromise his safety.  However, as an engineer, El Paso explained that other engineers in DePrisco's position had performed the same task and that this duty was within the scope of employment. DePrisco has not shown how El Paso's request that he inspect the drum would compromise his safety.

---

assignment in Aruba.  The notice of ending of the employee's assignment period in Aruba shall be considered tendered when the employee gives written notice by email or other means to either his immediate supervisor, the Vice President (Plant Manager), Director, or the Manager of Employee Relations at the refinery in Aruba, If such notice is tendered prior to the effective date of the assignment ending as set by the employee or earlier, then the company shall repatriate the employee with all benefits listed in Section IX of the letter (pages 7-8), additionally, the Company shall within 30 days of the assignment ending pay to the employee an assignment completion bonus equal to one year's base salary of the employee in effect one-week prior to the assignment ending only if the employee has completed at least three years of assignment service in Aruba including his time as a Coastal Employee.

DePrisco has not demonstrated how El Paso deliberately made the refinery unsafe for him.  DePrisco alleges that these "strange occurrences" were happening, however, he never explains what they were.  Furthermore, DePrisco alleges that he felt unsafe at the refinery, however he was unable to prove that his safety was in danger at the hands of El Paso. During his deposition, DePrisco named three fellow employees that shared his safety concerns.  However, DePrisco did not proffer any objective evidence to support his assertions.

In response, El Paso produced records that established its efforts to create a safer working environment.  These records are devoid of any evidence that DePrisco voiced safety concerns. Specifically, there is no evidence that DePrisco complained of safety issues to the Department of Human Resources.  Nor has he produced any evidence that other El Paso employees were concerned for their safety.  DePrisco has failed to show establish that El Paso deliberately made the refinery unsafe.

DePrisco claims that he did not resign as an employee and that he only terminated his assignment in Aruba. This position is inconsistent with his claim of constructive discharge, which requires that the employee involuntarily resign.  DePrisco was clear in his letter that he was not resigning and that he was terminating his employment for "unanticipated reasons" and, therefore, did not feel compelled to resign. Assuming all facts in a light most favorable to DePrisco, this Court concludes that his working conditions were not so difficult or unpleasant that a reasonable employee in his shoes would feel compelled to resign.

*Severance Benefits*

Under ERISA a denial of benefits is reviewed  "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Gaunt v. Mobil Corp. Employee Severance*

*Plan*, 205 F. Supp. 2d 715, 720 (2002)(quoting *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)).  If discretion is given in the plan either to determine eligibility or to construe its terms, the standard of review is the more lenient "abuse of discretion." *Id.*  The decision whether an abuse of discretion has occurred is based upon information known to the administrator at the time he made the decision. *Id.*

El Paso's motion for summary judgment outlines the various reasons that DePrisco should not receive severance benefits under the plan.  DePrisco however does not respond to El Paso's claims.  He merely states that he is entitled to the benefits as outlined in the contract.  However, the evidence shows that DePrisco failed to exhaust his administrative remedies.  Moreover, he did not submit a request to re-evaluate the benefits denial within the period for taking an appeal. Nevertheless, El Paso has extended the time for DePrisco to file an appeal. He failed to do so.  Therefore, after careful review of the record, the Court determines that the Plan Administrator did not abuse its discretion when they denied DePrisco severance benefits.

## VI.   CONCLUSION

In light of the discussion above, the Court hereby **GRANTS** the defendant's summary Judgment.

It is so **ORDERED**.

**SIGNED** this _26th_ day of October, 2005.

KENNETH M. HOYT
United States District Judge